Argued Jan. 26, decided Feb. 21, rehearing denied March 21, 1911.

## ANTHONY v. HILLSBORO GOLD MINING CO.

[113 Pac. 442: 114 Pac. 95.]

REFERENCE—AUTHORITY TO APPOINT REFEREE—STATUTORY PROVISIONS.

1. Laws 1874, p. 97, § 4, amending Section 805, Deady & Lane's Gen. Laws, which authorized a referee in equity suits to take testimony and report findings of fact and law, was amended by Laws 1893, p. 26, which authorized the court to appoint a referee in cases under Hill's Ann. Laws 1892 § 397 (Section 405, L. O. L.), to take testimony only, and Laws 1893, p. 26, amending Hill's Ann. Laws 1892, § 397, provided that suits unless otherwise referred under Hill's Ann. Laws 1892, § 815 (Section 838, L. O. L.), should be tried by the court, and that in districts composed of no more than one county, and having more than one judge of the circuit court, no cause should be referred without the written consent of all parties to the suit. Held, that a single judge of a district composed of four counties had authority without consent of counsel to refer a suit for the taking of testimony, but not for the return of findings.

APPEAL AND ERROR—REVIEW—HARMLESS ERROR—FINDINGS—DECREE.

2. Where a referee having no authority to make findings reports findings which are adopted by the court and a decree is rendered thereon, the court's action on the findings is not reversible error, since the suit is tried anew in the appellate court.

CORPORATIONS—ASSESSMENTS ON UNPAID SUBSCRIPTIONS—NOTICE.

3. Under Section 6686, L. O. L., authorizing a corporation to make by-laws for the sale of its stock for unpaid assessments provided "that no such sale shall be made without 30 days' notice of time and place of sale," a by-law providing that such sale may be had on four weeks' notice is void, and an attempted sale under such by-law, although there is an actual notice of 30 days, is invalid.

MINES AND MINERALS—STOCKHOLDERS—ACTIONS BETWEEN MEMBERS
    AND CORPORATIONS—ESTOPPEL.

4. The plaintiff was a subscriber to stock of defendant mining company which was paid in part and at a meeting where a settlement between plaintiff and defendant was considered, the plaintiff said that if the company would not pay him a stated sum per month and advance a sum for improvements for the next season, he would have nothing further to do with it, and that he had no more money to put in, but nothing

was said about the stock.   Defendant thereafter made a charge and an assessment against the plaintiff's stock.   *Held,* that plaintiff's statements not being a representation of existing facts but a statement of what he intended to do, he was not estopped to require the issue of stock to him.

MINES AND MINERALS—MINING CORPORATIONS—CORPORATE STOCK—PERSONS ENTITLED TO CERTIFICATES.

5. A subscriber to stock of a mining corporation gave the corporation an option on mining property and put in his own work for a season against the capital of his associates and received for his work only ordinary wages.   *Held,* that he was entitled to have the stock subscribed for issued to him after his failure to pay an assessment thereon, on payment of a sum in proportion to that paid and advanced on the stock by other stockholders with a credit for the option and his season's work less cash drawn from the corporation, with interest from the date of the assessment.

CORPORATIONS—STOCKHOLDERS—ADVANCES—NATURE OF OBLIGATION.

6. Advances by stockholders, as far as unpaid subscriptions by other stockholders are concerned, constitute a debt against the corporation, to the payment of which each stockholder must contribute his share.

CORPORATIONS—ASSESSMENTS—FAILURE TO PAY—EFFECT.

7. Failure of a stockholder to pay an assessment does not forfeit his rights; the corporation having a remedy to enforce payment.

From Washington: THOS. A. MCBRIDE, Judge.
Statement by MR. CHIEF JUSTICE EAKIN.

This is a suit by A. W. Anthony against The Hillsboro Gold Mining Company, a corporation, wherein plaintiff alleges that he is the owner of 1,000 shares of stock in the defendant corporation and prays for a decree establishing such ownership.   The facts as disclosed at the trial, are as follows:

On February 3, 1903, the defendant was duly incorporated, with a capital stock of $6,000, divided into 6,000 shares of the par value of $1.00 each.   The stock was subscribed as follows: J. W. Shute, 3,000 shares; A. C. Shute, 1,000; W. D. Hare, 500; A. W. Anthony, 1,000; J. C. Hare, 500.   J. W. Shute, J. C. Hare and A. W. Anthony were chosen directors; J. W. Shute, president; and A. C. Shute, secretary and treasurer.   Plaintiff alleges that, during the year 1903, he paid for his stock in full, namely $200, by delivering to the corporation an option to purchase a mine and $800 in services performed; that defendant refused to deliver to him his

stock, and on the contrary attempted to sell it for non-paid assessment thereon, and has excluded him from participation in the affairs of the corporation. He asks that he be adjudged to be a stockholder in defendant corporation, and that it be required to issue to him his stock.

Defendant denies that plaintiff has paid for his stock, except the $200, and states that on May 1, 1904, it duly levied an 80 per cent assessment on the stock of the corporation; that in default of such payment by plaintiff his 1,000 shares were on July 5, 1904, sold for $800 to Geo. R. Bagley, in the manner provided by the by-laws of the company. Defendant also alleges that plaintiff shall be and is estopped to maintain this suit for the reason that on November 20, 1903, he refused to pay the balance due on his stock ($800), and declared to the officers of the company that he would neither pay it nor have anything further to do with the corporation, its stock, officers, or stockholders; that he did not expect to own the stock of defendant; and that he abandoned any interest, right, or claim to such stock. Defendant and its officers, relying upon those statements and believing them to be true, paid and advanced on behalf of the company $9,800, with which to acquire the mining property—$5,795 for its development, and $1,500 for other purchases of mining property.

The allegations of the answer are denied by the reply. The cause was referred to C. E. Runyon to take and report the testimony and state his conclusion of fact and law, which he did, and made findings in favor of defendant. At the time of reference, counsel for plaintiff objected to the referee making the findings, and also objected to the findings when filed, and asked the court to ignore them. The court overruled plaintiff's objections and approved the findings of the referee, except No. 16, which was to the effect that the sale of the stock for nonpayment of assessment was duly made, and ren-

dered a decree thereon, dismissing plaintiff's suit, from which he appeals.                                    MODIFIED.

For appellant there was a brief over the names of *Messrs. Wilson & Neal,* with an oral argument by *Mr. A. King Wilson.*

For respondent there was a brief over the names of *Messrs. Bagley & Hare,* with an oral argument by *Mr. George R. Bagley.*

Opinion by MR. CHIEF JUSTICE EAKIN.

1. The statute of 1874 (Laws 1874, p. 97, § 4) amending Section 805, D. & L. Gen. Laws, authorized the court in equity suits to appoint a referee to take the testimony in the case and report his conclusions of fact and law thereon. This statute was amended in 1893 (Laws 1893, p. 26) by authorizing the court to refer the suit to a referee in the cases provided in Section 397, Hill's Code 1892 (Section 405, L. O. L.), to take the testimony in the case and report the same to the court, thus eliminating the provisions authorizing the referee to make findings. Section 397, Hill's Code 1892, as amended in 1893 (Laws 1893, p. 26), provided that suits shall be tried by the court unless otherwise referred (as provided in Section 815, Hill's Code 1892 [Section 838, L. O. L.]), "provided that in districts composed of no more than one county and having more than one judge of the circuit court, no cause shall be referred to a referee without the consent of all parties to such suit in writing filed in said cause except in suits involving the examination of long and complicated accounts." Washington County is in a district composed of four counties, at that time having but one judge. Thus, except in districts having more than one judge and composed of but one county, the judge is authorized to refer cases for the taking of testimony. Therefore, the reference of this case was not unauthor-

ized, even when made without the consent of counsel. But the referee had no authority to make findings.

2. The fact, however, that such findings were made by him and adopted by the court as its findings, and that a decree was rendered thereon, does not render the decree void, and as the suit is tried anew in this court, the ruling of the lower court in regard thereto is not reversible error: *Sutherlin* v. *Bloomer*, 50 Or. 398 (93 Pac. 135).

3. As to the effect of the attempted sale of stock of plaintiff, it is sufficient to state, that the by-laws of the corporation provided that such sale may be had upon four weeks' notice, while the statute (Section 6686, L. O. L.) provides that the corporation is authorized to make by-laws for the sale of any portion of its stock for unpaid assessments, "provided that no such sale shall be made without thirty days' notice of time and place of sale." Therefore, the by-laws of the corporation, so far as they provided for the sale of stock for nonpayment of assessments, are void. The corporation was without authority to make such sale, and it is not validated by the fact that the notice was given for 30 days, as the statute does not provide for or authorize the sale. The by-laws of the corporation must be the source of its authority.

4. Defendant also pleads and attempts to prove that plaintiff is estopped from claiming the stock for the reason that he has abandoned it, and declared that he would have nothing more to do with defendant, its officers, or stock; that defendant's officers relied thereon and advanced more than $17,000 to defendant company for the purchase of property and the operation thereof. The only circumstance testified to, tending to establish an estoppel, is to the effect that, at the board meeting on November 20, 1903, while a settlement was under consideration between plaintiff and defendant, plaintiff said, that if the company would not pay him $200 a month

and advance $5,000 for improvement for the next season, he would have nothing further to do with it. J. W. Shute testified that there was not a word spoken about stock; that plaintiff said he had no more money to put in, and was not going to have any more to do with it.

"It was plain enough, his actions, just what he said, that he wouldn't have anything more to do with it; and he went off and I never heard anything about him for some time afterward. * * He never mentioned it (stock) or asked for it at any place or time."

W. D. Hare and J. C. Shute testified to the same effect. But this constitutes no representation of any fact that justified defendant in assuming that he had surrendered his stock or abandoned it to the corporation. His acts and declarations only relate to what he would or would not do in the future, and was not a representation of any existing fact. The very first element of an estoppel is absent, namely, a representation of a fact—a past or present state of things. Here it was a mere statement of the intention of plaintiff. There was no element of agreement as to the future. Bigelow, Estoppel 570. His stock represented his interests in the corporation of which the certificate was the evidence of his title, and it was not lost or transferred by abandonment for failure to pay the value thereof. Nor did his statements involve the stock in any manner, and if the officers of the defendant anticipated his refusal to bear his portion of the burdens, as represented by his stock, they should have taken steps to cancel it or otherwise terminate his title thereto. The conduct of the officers thereafter shows that they did not consider that plaintiff had abandoned it, as at the meeting of the board of November 20, 1903, at which plaintiff was present, and participated in the business of the meeting, it was ordered that "A. W. Anthony be charged against his stock to be issued to him for his share, beginning with the $5,000 paid November 15, 1903,

on mine." Again, at the meeting of May 21, 1904, an 80 per cent assessment was levied on the stock of the company, and thereafter defendant proceeded to sell plaintiff's stock for nonpayment thereof. Therefore, there was no abandonment of his stock or conduct that estopped him from claiming it.

5. It is also urged that plaintiff's stock was not paid in full, and therefore he is not entitled to have it issued. Thus it is necessary to ascertain the terms of the agreement under which the service was rendered. Plaintiff claims that he made his agreement with J. W. Shute early in September or late in August, 1902, as they rode from the mine to Sparta, when Shute first talked of purchasing it, by which he was to have a laborer's wages for the work done, and that his service as superintendent was to pay the balance due on his stock. He says that was the only agreement he had about the stock; that nothing was said about the amount, its value or the capital stock of the corporation; nor how long he was to serve for the stock. Again he says:

"Mr. Shute at that time had no associates. He went over there to examine that mine, and he seemed pleased with it, and on the way back he agreed and asked me if I would superintend the mine provided he bought it."

Evidently no arrangement had been made at that time to incorporate, nor any agreement made binding Mr. Shute. On the contrary Shute expressly denies that he made such an agreement, and W. D. Hare testifies that on or about November 20, 1902, at Hillsboro, an agreement was made by which "Anthony was to put in his time and Mr. Shute, Joseph and I. and Artie (meaning J. W. Shute, J. C. Hare, himself, and A. C. Shute) was to furnish the money to run the mine, to operate for that year. * * He was to put in his time against the use of our money in operating it." J. W. Shute testified, that "he (Anthony) was willing to take hold for the season and

run it if we would furnish the money to fix it up and run it through. * * He said, 'I am going to take chances with you, and if you put in the money * * to show you I have faith in it I am willing to take chances with you. I will put up my time against your money.'" This is evidently the arrangement under which Anthony rendered the service, and not that his time was to be the compensation for the stock. The money for the expenses and operation of the mine was placed to plaintiff's credit at Baker City, and without knowledge of the corporation he drew wages for himself, at ordinary miner's wages (namely, $553.50). Later, after some controversy, a small balance due upon the settlement was paid to him by the company. His stock by agreement is credited with the $200 consideration for the option. According to the account book, the money advanced by the stockholders, for expenses and on the purchase price of the mine, has been credited as payment on their stock, paying for it in full, and plaintiff is entitled to a credit for his season's work, less the cash he has drawn, viz., $246.50, being a sum proportionately equal to the amount advanced by the other stockholders for the improvement and operation of the mine (which was $4,000 or 80 per cent of their stock). The act of the corporation in settling the balance of plaintiff's account, which included his wages, in no manner affects or reduces the amount due on the stock.

Therefore, the decree of the lower court will be modified to the effect that, upon the payment by plaintiff of $553.50, with interest thereon at 6 per cent per annum from May 21, 1904, the date of the assessment, said 1,000 shares of stock in defendant company be issued to plaintiff; and that each party pay his own costs in both courts.                                   MODIFIED.

Mr. Justice MCBRIDE, having tried this cause in the lower court, took no part in the decision.

Rehearing denied March 21, 1911.

## ON PETITION FOR REHEARING.

[114 Pac. 95.]

Opinion by MR. CHIEF JUSTICE EAKIN.

6. By the motion for a rehearing, defendant contends that the settlement of November 20, 1903, was a discharge in full for all services performed by plaintiff during the year 1903, and therefore he was not entitled to credit on the price of his stock for any service. The evidence shows that plaintiff contended that he was entitled to miner's wages, $3.00 per day, independent of the amount to be allowed him for superintending the mine, and that the settlement only included the amount of his miner's wages, on the accounting for the money passing through his hands. But, as stated in the opinion, we find that his whole summer's work, both the mining labor and superintending the mine, were to be offset or compensated by the money advanced by the other stockholders for the expense of operation, the amount advanced being $4,000; and as defendant credited this amount, viz., 80 per cent of the value of the stock, in payment upon the stock of the other stockholders, plaintiff is entitled to a *pro rata* amount credited upon his stock, which would have paid his stock in full; but, as he had drawn $553.50 in cash on his work, his credit must be reduced accordingly, leaving that amount still due from him on his stock. The other advances made by the other stockholders stand as a debt against the company, and are enforceable as such, of which plaintiff's stock must bear its part.

7. Failure of plaintiff to make payment as he agreed does not constitute a forfeiture of his rights. If he failed to pay, the company had a remedy to enforce payment. The penalty of his default is not different from other contracts or obligations to pay money.

The motion is denied.

MODIFIED: REHEARING DENIED.