Argued at Pendleton May 7, affirmed May 28, 1918.

## CRAIG *v.* CRYSTAL REALTY CO.

(173 Pac. 322.)

**Equity—Depositions—Special Referee—Admissibility—Statute.**

1. Under Section 837, L. O. L., providing that the testimony of resident witnesses under certain circumstances may be taken by deposition in an action at law or in a suit in equity, and Section 838, providing that if a witness is a nonresident or is not found in the state his testimony can only be taken in a suit in equity by a special referee who shall return the testimony taken to the court appointing him, and in view of Sections 1012, 165 and 166, defining a referee and a trial by a referee and relating to the filing of his report, the deposition of a nonresident witness taken in a suit in equity pursuant to a commission issued to a notary public in another

state and returned to the court was inadmissible in a suit in equity, because not taken by a special referee.

[As to proof of authority of person in foreign jurisdiction to take deposition, see note in Ann. Cas. 1914B, 161.]

### Agriculture—Lien—Construction of Statute.

2. A statute such as Section 7439, L. O. L., creating a lien for the clearing and improvement of land, etc., is remedial, and should be liberally construed in favor of those for whose benefit it was enacted.

### Agriculture—Lien—Clearing and Improving Land—Construction of Statute.

3. Under such interpretation a substantial compliance with its requirements is essential to the validity of the notice of lien, and in a suit for its foreclosure the plaintiff by his complaint must bring himself within the purview of the statute.

### Agriculture—Lien—Clearing and Improving Land—Construction of Statute — "Ditching, Diking or Tiling" — "Diking" — "Clearing Land."

4. Under Section 7439, L. O. L., providing that anyone clearing or improving any land by ditching, diking or tiling at the request of the owner or the lawful possessor shall have a lien on the land for his wages and charges preferred to every other subsequent lien, mortgage or encumbrance, one plowing land and moving the earth so broken up into the low places and preparing the soil for cultivation and making a ditch and removing sagebrush was entitled to a lien; the words "by ditching, diking or tiling" expressing every kind of work necessary to convert parts of arid land, particularly sagebrush lands, into farms and orchards, and the word "diking" as applied to arid regions implying a leveling of the land, and the term "clearing land" as applied to arid regions covered with sagebrush meaning not only the removal or the destruction of the brush but the plowing or breaking up of the roots as well.

### Agriculture—Lien—Clearing and Improving Land—Request of Owner or Lawful Possessor.

5. In such case, evidence *held* to show that the work done by plaintiff was performed at the request of the owner of the land or by the person in the lawful possession thereof.

### Agriculture—Lien—Clearing or Improving Land—Owner or Possessor—Ratification.

6. In such case, although the owner did not originally contract with the plaintiff for or consent to the work in clearing the land, yet where by its agent it ratified and approved the work, it subjected the land to the lien.

### Agriculture—Lien—Clearing and Improving Land—Lien Notice—Statute.

7. Under Section 7440, L. O. L., requiring a lien notice for improving and clearing land to be filed within 60 days after the completion of the work, when the labor required under the original contract was omitted, its final completion pursuant to such agreement dated from the time such omissions were supplied by the lien claim-

ant at the request of the owner, and a notice filed within 60 days after such completion was sufficient.

BURNETT, J., dissenting.

From Malheur: DALTON BIGGS, Judge.

In Banc.

This is a suit by T. H. Craig against the Crystal Realty Company, a corporation, and others, to foreclose two alleged liens for clearing and improving land. The plaintiff on January 20, 1915, filed with the county clerk of Malheur County, Oregon, a verified claim, addressed to the defendant H. Tyree and all other persons whom it might concern, substantially notifying them that a lien was asserted against the southeast quarter of the northwest quarter of section 25, township 16 south, range 47 east in that county, for work and labor performed between October 1, 1914, and November 23d of that year in clearing, improving, ditching and diking the described real property at the request of H. Tyree, who at all times mentioned in the notice, was the owner and in possession of the premises; that Tyree stipulated to pay him for making the improvement, a specified sum of money for each day's work with teams; that pursuant thereto the plaintiff's labor amounted to $423.50, on account of which he had received only $23.00, thereby leaving due him $400.50; and that 60 days had not elapsed since the last of such work had been performed.

The plaintiff on April 26, 1915, also filed another verified claim in the same manner, declaring a lien against the northeast quarter of the northwest quarter of the section, township and range mentioned in the preceding notice, for work done in clearing, improving, leveling and diking the real property, which labor was performed between August 7, 1914, and

March 25, 1915, at the request of Tyree who, at all times stated in the notice, was the owner and in possession of the premises; that the plaintiff was so employed by J. F. Carnifix, who was the agent and contractor of Tyree and was then authorized to secure the performance of the labor; that pursuant to the agreement the plaintiff worked with teams, which service at the price stipulated therefor amounted to $621.37, on account of which he had been paid only $232.90, thus leaving due him $388.47; and that 60 days have not elapsed since the last of such work was performed.

Each of these liens is set forth as a separate cause of suit in the complaint, which alleges the performance of such work, the preparing and filing of the notices of liens therefor, in which an expense of $6 was incurred in each instance; that the plaintiff was entitled to specified sums as attorney's fees, for foreclosing the liens; and that the defendants, H. Tyree, Roska E. Kitch, Helen M. Kitch, John R. Worley and Jane, his wife, A. M. Sloman, and G. W. Giesler and J. C. Giesler, partners as Giesler Brothers, had or claimed some interest in the lands so described, but that such assertion of right or estate was subordinate and inferior to plaintiff's liens.

A demurrer to each of the causes mentioned, on the ground that the complaint did not state facts sufficient, in either instance, to constitute a cause of suit, was overruled. Thereupon the defendants, the Crystal Realty Company, H. Tyree, Roska E. Kitch and Helen M. Kitch jointly answering, denied the material averments of the complaint, except that each claimed an interest in the lands. Predicated upon these issues the cause was tried and from the testimony received the court made findings of fact and gave a decree in

favor of the plaintiff as prayed for in the complaint, and the Crystal Realty Company alone appeals.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Ralph W. Swagler.*

For respondent there was a brief over the name of *Messrs. Wood & McCulloch,* with an oral argument by *Mr. Wells W. Wood.*

MOORE, J.—1. Pursuant to a commission, issued by the clerk of Malheur County, Oregon, to John O. McClintock, a notary public at Meadville, Pennsylvania, he, on August 1, 1916, without any stipulation and in the absence of the plaintiff, his counsel, or other representative, took the depositions of the defendants, Roska E. Kitch, Helen M. Kitch and H. Tyree, and with his certificate such sworn statements were mailed to the clerk of the court which appointed him. The envelope, containing these papers, was opened by order of the court at the trial, April 19, 1917, and though an objection interposed by plaintiff's counsel to the reading of such sworn statements, on the ground that they had not been taken in the manner prescribed, was sustained and an exception allowed, the depositions were received in evidence under Section 405, L. O. L., and have been sent up with the transcript. It is contended by defendants' counsel that an error was committed in refusing to consider the testimony so taken and returned. The testimony of any witness residing or found in Oregon may be taken under certain circumstances, by depositions in an action at law or a suit in equity: Section 837, L. O. L. Where a witness resides out of or is not found within this state, however, his testimony can only be taken in a suit

in equity by a special referee, selected for that purpose, whose duty it is to return to the court appointing him the testimony so taken: Section 838, L. O. L.

In *Marks* v. *Crow,* 14 Or. 382 (13 Pac. 55), it was held that the statute then in force contained no provision for taking the deposition of a witness in a suit in equity, even *de bene esse,* unless a reference was made to find the facts. Since that decision was rendered the statute has been amended so as to authorize in some instances the submission of a cause to a referee, who is powerless to make any findings of fact in a suit in equity: *Anthony* v. *Hillsboro Gold Min. Co.,* 58 Or. 258 (113 Pac. 442, 114 Pac. 95) ; *In re Level,* 81 Or. 298 (159 Pac. 558).

"A referee is a person appointed by the court or a judicial officer with power * * to take and report the evidence in a suit in equity": Section 1012, L. O. L.

"Subject to the limitations and directions prescribed in the order of reference, the trial by referees shall be conducted in the same manner as a trial by the court": Section 165, L. O. L.

"The referees shall file with their report the evidence received upon the trial": Section 166, L. O. L.

It will thus be seen that the testimony of a witness who is not a resident of or found within Oregon can only be taken in a suit in equity by a special referee appointed for that purpose, whose duties, for the term of his selection are equivalent to those of the court which he thus represents. A trial by a referee in another state of a suit in equity pending in this state, does not authorize such appointee to take depositions to be used in Oregon, and no power is to be found in our statute for the appointment of a commissioner to take in another state depositions to be used in Oregon in a suit in equity.

An author in speaking of the sworn statements of a witness, received under such circumstances, remarks:

"A deposition taken irregularly, and not in conformity with the requirements of law, is inadmissible as testimony, and may be excluded on motion at the trial of the cause": Weeks, Depositions, § 366.

No error was committed in refusing to permit such sworn statements to be received in evidence, or in declining to consider the testimony so given.

2, 3. The plaintiff, referring to the work which he performed, as stated in the lien notice first filed, testified that he plowed the land there described and moved the earth so broken up into the low places; prepared the soil for cultivation and made a ditch across the west end of the tract; that he did clearing and ditching, the work of which at the price agreed upon amounted as stated in the first lien notice; that he had received payment on account thereof only as detailed, thereby leaving due the money so demanded; that he cleared the land described in the second notice of lien by removing the sagebrush then growing thereon; that he plowed and moved the earth as in the other tract, described in the first lien notice, and built along the west side of the north 40 acres a fill or dike from 6 to 26 inches high as a base for a ditch; that the work at the price specified amounted as stated in the second lien notice; that he had received on account thereof only the payments mentioned, and that there was due him the money thus undertaken to be recovered, together with the sum of $12, as expenses which had been incurred in preparing and filing the notices of lien and was entitled to other sums as attorney's fee.

It is contended by defendants' counsel that the principal work performed by the plaintiff consisted in leveling land, for which labor no lien is given. The

clause of the statute relied upon as conferring the right to resort to real property as security for labor performed in improving the premises, reads:

"Any and all person or persons who shall hereafter clear any land or improve the same by ditching, diking, or tiling the same, at the request of the owner or person in the lawful possession of the same, shall have a lien on the said land so improved or cleared for his wages and charges for the said service, which lien shall be preferred to every other lien, mortgage, or encumbrance of a subsequent date": Section 7439, L. O. L.

In *Pilz* v. *Killingsworth,* 20 Or. 432, 435 (26 Pac. 305), Mr. Justice BEAN says:

"The right to a lien is in derogation of the common law, and can only be established by a clear compliance with the requirements of the statute. The right is conferred by statute, and the party claiming such lien must show a substantial compliance with the statute, and by his complaint must bring himself within its provisions."

In *Nicolai Bros. Co.* v. *Van Fridagh,* 23 Or. 149, 150 (31 Pac. 288), the same justice further remarks:

"We have repeatedly held that while the act relating to mechanics' liens should be liberally construed, it is essential to the validity of a lien that the claim filed should on its face show a substantial compliance with the provisions of the law, and that none of the essential requirements of the statute can be dispensed with."

Based upon these excerpts it has been frequently stated that a statute creating a lien is in derogation of the common law, and like all other enactments detracting from such ancient rules, it should be strictly construed. It is believed, however, that our decisions upon this subject can all be harmonized by holding that a statute creating a lien is remedial in character

and should be liberally construed in favor of the persons for whose benefit it was enacted: *Ainslie & Co.* v. *Kohn,* 16 Or. 363, 371 (19 Pac. 97); *Willamette Steam Mills etc. Co.* v. *Shea,* 24 Or. 40, 53 (32 Pac. 759); *Sarchet* v. *Legg,* 60 Or. 213, 218 (118 Pac. 203). But when the statute is so interpreted, a substantial compliance with its requirements is essential to the validity of the notice of lien, and in a suit for its foreclosure, the plaintiff by his complaint must bring himself within the purview of such beneficent rendering of the provisions of the enactment: *Kezartee* v. *Marks & Co.,* 15 Or. 529, 535 (16 Pac. 407); *Pilz* v. *Killingsworth,* 20 Or. 432, 435 (26 Pac. 305); *Gordon* v. *Deal,* 23 Or. 153, 154 (31 Pac. 287); *Curtis* v. *Sestanovich,* 26 Or. 107, 115 (37 Pac. 67); *Coffey* v. *Smith,* 52 Or. 538, 540 (97 Pac. 1079).

4. Section 7439, L. O. L., was enacted and approved February 20, 1891 (Laws Or. 1891, p. 100), after the clearing and successful cultivation of sagebrush lands in Eastern Oregon had evolved from a state of experiment to a degree of certainty. Without the use of water to irrigate such lands when improved, crops sowed or planted thereon usually perish in the almost constant sunshine of that arid region. The clause of the statute which provides for clearing any land or improving it by ditching, diking or tiling was evidently enacted to facilitate, by the employment of or contract with laborers, the cultivation of sagebrush lands where the use of water for irrigation is essential to the production of valuable crops. The limiting words "by ditching, diking or tiling" were undoubtedly employed to embrace every kind of work necessary to convert parts of an arid plain into profitable farms and fruitful orchards. The statute having been evidently designed to apply, more particu-

89 Or.—3

larly, to sagebrush lands, the limiting words referred to should be so construed as to include every class of work and labor that might reasonably be embraced within the literal meaning of the terms so employed. The preparation of sloping surfaces for irrigation often requires, for the holding and diffusing of water, the making of small dikes or ridges to build which the earth must be removed from the higher places and used in forming small embankments, thereby necessitating a uniform leveling of the land. As the word "diking," when applied to the arid region of Oregon, means the raising of an embankment of earth, the use of that term in the statute necessarily implies a leveling of the land to accomplish which the person performing the work, at the request of the owner of the premises or of the person in the lawful possession thereof, is entitled to a lien for leveling real property for irrigation within a liberal construction of the enactment.

The phrase "clearing land" must have different significations in various localities. Thus in the timbered sections of Oregon the term referred to probably means the cutting and removal or destruction of timber and brush, thereby leaving in the earth the stumps and roots, while in the arid regions of this state, which part of Oregon is usually covered with sagebrush, the clearing of such land evidently means not only the removal or destruction of the brush but the plowing or breaking up of the roots as well. The plaintiff's testimony shows that the work which he performed was of that class for which liens are given.

5, 6. It is contended by defendants' counsel that the work so done by the plaintiff was not performed at the request of the owner of the real property or by the person in the lawful possession thereof. The defendant,

the Crystal Realty Company, a corporation, is the owner of the land upon which the liens are undertaken to be impressed. That owner could be in possession of the premises only by an agent, and could act only by such a representative. The testimony shows that the defendant Tyree, as agent for the owner of the land, had authority from his principal to bind it by the contract which he made with the plaintiff for the performance of the work set forth in the first lien.

The last lien filed, in referring to the plaintiff, contains clauses which read:

"That at the time said work and labor was performed by me as aforesaid, one H. Tyree was, and ever since has been, and now is, the owner and person in possession of said lands, and I was employed to perform said labor for T. Tyree by one J. F. Carnifix who was then and there the agent and contractor of the said H. Tyree and had authority from the said H. Tyree to employ me to perform said work and labor. * * That claimant was employed on the 4th day of August, 1914, by the said H. Tyree acting through his duly authorized agent, J. F. Carnifix, to clear, improve, level and dike the above described lands."

The plaintiff testified that two days after he began work on the land described in the second lien, Mr. Tyree visited the premises and directed him how to proceed, which commands were obeyed; that the improvement of the north 40-acre tract was so made under the supposition that Tyree was the owner of the real property; and though Mr. Carnifix originally requested the witness to do the work, he expected Tyree who instructed where and how the labor should be performed would pay therefor.

Although the owner of the land did not originally contract with the plaintiff for, or consent to the per-

formance of the work in improving the premises, the Crystal Realty Company, by its agent Tyree, ratified and approved the labor which was so performed, thereby subjecting the real property to the lien: 27 Cyc. 72.

We think there can be no doubt that the work described in the lien notices was performed at the request of the owner.

7. It is insisted that the second lien notice was not filed within 60 days after the completion of the work, as commanded by Section 7440, L. O. L. The testimony shows that the plaintiff commenced work on the north 40-acre tract August 7, 1914, and continued laboring on the premises until the ground froze so hard he was obliged to suspend operations; but that on March 25, 1915, he finished the work at the request of Tyree and within 60 days therefrom the second notice of lien was filed. When labor demanded by the terms of an original agreement has been omitted, the final completion of the work pursuant to the terms of the contract dates from the time such omissions are supplied by the lien claimant at the request of the owner: *Avery* v. *Butler,* 30 Or. 287, 292 (47 Pac. 706). That the work required to complete the improvement of the north 40 acres of the land was not considered finished January 20, 1915, when the first lien was filed and within 60 days from the time in which the ground froze, is seemingly evidenced from the fact that the second lien notice was not then given.

A consideration of the entire testimony convinces us that the work performed in March, 1915, was done at Tyree's suggestion to complete the contract and not to extend the time for filing the lien.

It follows that the decree is affirmed.   AFFIRMED.

BURNETT, J., Dissenting.—I dissent from the conclusion of Mr. Justice MOORE in this case sustaining the liens mentioned in his opinion, because the testimony does not show that the work relied upon to uphold them was done "at the request of the owner or person in lawful possession" of the land within the meaning of the statute, and because the plowing and grading or "leveling" is neither clearing nor "ditching, diking or tiling," the only things mentioned in the act for which a lien upon the realty is allowed.

---

Reversed and decree rendered February 5, rehearing denied May 28, 1918.