Argued January 15, affirmed March 2, 1920.

## BROCKWAY *v.* READY BUILT HOUSE CO.

(187 Pac. 1038.)

**Corporations—Stock Subscription may be Made in Either Property or Services Under Agreement Providing Therefor.**

1. Payment for stock subscribed may be made in property or services, if so agreed upon between corporation and subscriber; but, in absence of such agreement, the subscription is deemed payable in cash.

**Corporations — Corporation's Debt to Subscriber may, Under Agreement With Corporation, be Credited upon Amount Due upon Unpaid Subscription.**

2. As between a solvent corporation and a subscriber who is a creditor of the corporation, the parties may agree that the debt owing to the subscriber may be credited upon the payment due from him upon an unpaid subscription.

**Corporations—Subscriber's Unliquidated Claim not to be Set Off in Equity Against Subscription.**

3. In absence of agreement or equitable ground of relief, a subscriber having an unliquidated claim against a corporation cannot go into equity and have the claim there liquidated and set off against the amount due on subscription; the corporation having a right to have the validity of the claim tried at law with the aid of a jury.

**Corporations — Allowance of Claim of Subscriber and Credit for Amount in Payment of Assessment, Legal.**

4. In absence of fraud, corporation may allow claim presented for machines furnished or services rendered by subscriber and credit amount in payment of assessment.

From Multnomah: HARRY H. BELT, Judge.

Department 2.

This was a suit primarily to restrain defendants from selling plaintiff's shares of stock for an alleged unpaid assessment thereon.

The complaint alleges in substance that in May, 1911, plaintiff, defendant J. H. Fenner, and W. R. Misner organized the defendant corporation; that Fenner was elected president, plaintiff secretary and treasurer, and that plaintiff, defendant Fenner, and Misner were elected directors; that the capital stock was twenty thousand ($20,000) dollars, divided into shares of $10 each, of which Fenner subscribed for 666⅔ shares, Misner for the same number and plaintiff for a like number, one share being issued to plaintiff in his own name and 665⅔ in the name of his mother, Pamelia Janet Brockway, and subsequently assigned to plaintiff; that each of the subscribers paid $250 into the corporation and that no other cash payments have been made thereon; that it was understood and agreed between plaintiff and said corporation that he would pay the balance due upon said stock by rendering service to said corporation, and that during the year 1913 and up to May, 1914, he rendered service to said corporation of the reasonable value of $1,000, for which he has received no compensation whatever, except that he was entitled to have the same credited upon the purchase price of his stock; that on May 1, 1914, plaintiff gave up all other employment and devoted his whole time to the service of said corporation for a period of two years and three months, and that said services are reasonably worth the sum of $300 a month, which amounts in the aggregate to the sum of $8,100, and that plaintiff was paid thereon in money the sum of $1,141.52 up to November 1, 1915, and other payments since said

date, amounting to less than $500, the exact amount of which plaintiff does not know, but which is known to defendant, who fails and refuses to make him a statement of such amount.

The complaint further alleges: That through the efforts of plaintiff he established for the corporation a highly profitable business, but that in 1916 defendant Fenner conceived the idea of either wrecking the company and taking it over by that method, or else by some unlawful method getting from plaintiff his stock in said corporation, and, in order to effectuate the same, entered into a conspiracy with the defendant Patterson, who was a clerical employee of the corporation, and procured the proxy of defendant Knapp so that with his own stock he had a majority of the stock of the corporation, and at the annual election of 1916 he caused the following board of directors to be elected, to wit: J. H. Fenner, A. R. Fenner, E. F. Patterson and O. W. R. Hossack, and defeated plaintiff as one of the directors, and said board of directors elected J. H. Fenner president and general manager; A. R. Fenner, his wife, vice-president; E. F. Patterson treasurer, and O. W. R. Hossack secretary, and thereafter the directors passed a resolution levying an assessment of 15 per cent upon all the stock of the corporation, although they well knew that there was due and owing plaintiff for services performed, as aforesaid, more than enough money to discharge the full purchase price of said stock and that plaintiff owed nothing thereon. That at the time plaintiff was voted out of office, neither Knapp nor Fenner had paid the corporation anything for their stock, except the $250 paid by each as aforesaid, although Fenner had performed certain services in excess of what had been paid and for which he would have been entitled to credit.

It was also alleged upon information and belief that for the fraudulent purpose of carrying out his plans, defendant Fenner transferred without consideration one share of stock to each of the defendants, Patterson and Hossack, and that they have no financial interest in the corporation, but are merely dummies put in for the purpose of carrying out the plans of Fenner, and that Fenner also transferred certain of his stock to his wife A. R. Fenner, who is also on the board of directors, for the purpose of carrying out the plans of her husband. That at the time said assessment was levied the property of the corporation had increased in value until it was reasonably worth $8,000, and had an established business and goodwill of the value of $12,000. That plaintiff has declined to pay said assessment and has demanded an accounting, but that defendants who have possession of all the corporate books refuse to account and have advertised plaintiff's stock for sale and unless restrained will sell the same on said assessment.

There were also allegations that the defendants were conspiring with F. C. Knapp to wreck the corporation and turn over its property, goodwill, and business to the Peninsula Lumber Co., of which Knapp was president, and the usual allegations of irreparable injury.

There was a prayer for a decree that defendants be enjoined from selling plaintiff's stock, adjudging that it had been fully paid for and that defendants be enjoined from attempting to undermine the business of the Ready Built House Company, or disposing of its business to any other company, and for equitable relief generally.

A temporary injunction issued, and thereafter the defendant corporation answered, among other things denying that it was agreed that plaintiff should pay

for his stock by personal service or that he has rendered any services for which he was to be paid, and denied that any services were rendered by plaintiff for which he was paid, or to be paid, any sum whatever and substantially denied every material allegation of the complaint.

There were like denials in answers filed by the other defendants, which are too long to be inserted here, but sufficient in form and substance to put plaintiff upon proof of the allegations of wrongdoing alleged in the complaint.

A reply was filed putting the cause at issue, and upon a hearing the court made formal findings as to the existence and business of the corporation and the relation of the parties thereto; found that the assessment of 15 per cent was duly levied; that plaintiff, aside from his duties as secretary, performed labor and rendered services for defendant corporation at its special instance and request, but that no understanding or agreement was ever made or had by and between the plaintiff and defendants, or either of them, that plaintiff should be credited upon the unpaid portion of stock issued to him for the amount due for such labor and services.

As a conclusion of law the court found that the amount due plaintiff for labor and services was not a proper offset against the amount due defendant corporation, on account of stock subscribed by him, and that therefore plaintiff was not entitled to relief in equity, and thereupon entered a decree dismissing the suit without costs to either party, from which decree plaintiff appeals.                    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Jay Bowerman.*

For respondent there was a brief and an oral argument by *Mr. Frank H. Hilton.*

McBRIDE, C. J.—The allegations of a conspiracy among the defendants to wreck the corporation are not sustained by the evidence and need not be further considered.

1. The evidence, in regard to what, if anything, plaintiff was to be paid for his services, is conflicting, and there is no evidence that the defendant corporation in its corporate capacity ever agreed that any amount due or to become due on account of such services should be credited against his subscription for stock. There is no doubt that payment for stock subscribed may be made in property or services, if so agreed upon between the corporation and the subscriber: 1 Cook on Corporations, Chapter II, Sections 16, 17 and 18. But in the absence of such an agreement, the subscription is deemed payable in cash: Ibid., Section 17, *supra.*

2. There is also no doubt but that as between a solvent corporation and a subscriber, who is a creditor of the corporation, the parties may agree that the debt owing to the subscriber may be credited upon the amount due from him upon an unpaid subscription.

3. But this is as far as any of the authorities go. We have found no case, and counsel for plaintiff has cited us to none, going so far as to hold that in the absence of an agreement to that effect, and in the absence of some other equitable ground of relief, a subscriber to stock, having an unliquidated claim against a corporation for services, or otherwise, can go into equity and have the claim there liquidated and set off against the amount due on his subscription. Such a course would deprive the corporation of its right to

have the validity of the claim tried at law with the aid of a jury, to say nothing of the embarrassments which would arise to corporations in making calls for assessments and computing in advance the amount necessary to include in the call.

If an employee stockholder can thus offset a claim for personal services against his corporation, there would be no valid reason why he might not buy up claims of others against the company and invoke the aid of equity to offset them against his subscription.

The case of *Anthony* v. *Hillsboro Gold Min. Co.,* 58 Or. 258 (113 Pac. 442, 114 Pac. 95), is cited by plaintiff in favor of his contention, and, while at first glance it may so appear, a critical examination of it shows the contrary.

In the first place, there was another invulnerable ground in that case for equitable relief, and the question of the value of Anthony's services was merely incidental to the main question. There was an attempt to sell his shares upon an assessment levied in pursuance of a void by-law, and the legality of the proceedings was the principal matter contested. Equity having jurisdiction for this purpose could finally settle all matters relating to the subscription which were in dispute between the parties.

In the second place, the court found that there was an agreement between the parties that the plaintiff Anthony should put his service against the money which the other parties to the adventure should expend in paying for the mine, and that, as the other parties had received shares of stock to the amount of the money they had contributed, Anthony was entitled also to receive stock to the value of the services rendered by him less $553.50, unlawfully drawn from the company's treasury.

It will be noted that here was an agreement between the parties. Anthony, in effect, was to pay in services irrespective of their value, and against these services the other parties were to pay money. Anthony's services constituted in effect a liquidated demand, and this, coupled with the agreement recited in the opinion, probably brought the case within the rule, as stated in Cook on Corporations, Chapter II, Sections 16, 17 and 18. The writer of this opinion, who tried the case at Circuit, thought and decided differently but was reversed, and no doubt properly, by this court.

It may be proper to add that the phase of the case here discussed was not argued in the briefs of counsel, or alluded to by the court in its opinion in *Anthony* v. *Hillsboro, etc.,* 58 Or. 258 (113 Pac. 442, 114 Pac. 95), the defendants relying principally upon certain estoppels pleaded in the answer as a defense against the patent irregularity in the notice of sale of the stock.

4. It is claimed that the assessment is unequal, but no inequality is shown in the pleadings, which allege in substance that each subscriber paid the first assessment of 10 per cent on the stock subscribed by him, and that no other payments had been made thereon by anybody, except in so far as the value of the services rendered by plaintiff and Fenner constituted payments. In the testimony it appeared that at the inception of the corporation Fenner had furnished certain necessary machinery, for which he had never been paid. Fenner presented a claim for the price of the machinery, with interest, and this claim was allowed by the corporation, and by agreement he was given credit for the amount in payment of his assessment. In this, in the absence of fraud, there was nothing illegal. There is no doubt or controversy about his having furnished the machinery and nothing to indicate

that his claim for compensation was not just. The corporation had a right to allow it and, when so allowed, to agree that the amount found due him should be credited upon the sum due upon stock subscription.

Had plaintiff presented his claim for services and succeeded in inducing the corporation to allow it or part of it and to credit it upon his stock subscription, the transaction would have been perfectly legal and regular, but his claim has never been liquidated and no agreement to credit it upon his stock subscription has been shown, so that so far as we can see he has no remedy except to pay his subscription and bring his action at law upon his alleged claim for services, so that a jury, which is seldom illiberal when a question of wages is submitted to it, can determine what the actual agreement was in reference thereto and appraise the value of the services performed.

The decree of the Circuit Court is affirmed.

AFFIRMED.

BEAN, JOHNS and BENNETT, JJ., concur.